People of State of Illinois, Defendant in Error, v. Robert E. Brickey, Plaintiff in Error.

Gen. No. 9,545.

Opinion filed October 29, 1947. Released for publication November 25, 1947.

HOMER ENGLISH and CHESTER THOMSON, both of Bloomington, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, for defendant in error; CLIFFORD N. COOLIDGE, State's Attorney, McLean County, and JOSEPH W. DEPEW, of Bloomington, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

An information was filed in the county court of McLean county which charged the defendant with keeping and operating a common gaming house in violation of Ill. Rev. Stat. 1945, ch. 38, sec. 127, par. 325, of the Criminal Code [Jones Ill. Stats. Ann. 37.255]. The information also charged that the defendant had been previously convicted in the same court of the same offense.

A jury found the defendant guilty as charged and fixed his punishment at a fine of $1,000 and eighteen months confinement in the county jail. Judgment was entered on such verdict.

The defendant sued out a writ of error to the Supreme Court to review such judgment. The Supreme Court, in *People v. Brickey,* 396 Ill. 140, held that no

constitutional question was properly and sufficiently presented within the meaning of the statute authorizing direct appeals to, or writs of error from, the Supreme Court, and the Supreme Court thereupon ordered the cause transferred to this Appellate Court.

The defendant contends that the punishment sought to be inflicted is out of proportion to the offense, and that the verdict is manifestly against the weight of the evidence. These contentions require a review of the evidence.

As to the alleged former conviction, the records of the county court were admitted in evidence without objection, and show that on May 23, 1944, the defendant pleaded guilty in the county court to the charge of keeping and operating a gaming house as charged in an information filed in said court on April 11, 1944, and was fined $200 and costs, which he paid.

As to the alleged second offense, the undisputed evidence shows that on October 10, 1945, and for sometime prior thereto, there was located in the City of Bloomington an incorporated club styled "Evergreen City Business Men's Club." The membership fee was $1 per year, payable quarterly. The club occupied the first and second floors of a building. Cigarettes and candy were sold on the first floor. There was a door at the bottom and a door at the top of a stairway which led to the second floor. Both doors were controlled by automatic latches operated by push buttons located at the counter where candy and cigarettes were sold. On the second floor there was located a pool table that had been converted into a crap table, on the cover of which table there were marked certain numerals.

On October 10, 1945, police, armed with a search warrant, raided the club rooms and found a group of men around the crap table. The police found dice, cards, a "rake" and other gambling apparatus. The defendant was the treasurer and a member of the club. The president of the club, as a witness for defendant, testified that the defendant did not really work at the

club, just helped the witness out and received no regular salary. The chief of police testified that at the time of the raid the defendant met him at the head of the stairs.

One witness testified that he signed a membership card and paid twenty-five cents therefor; that he was at the club and shot craps for money several times shortly before October 10, 1945, and on such occasions had seen the defendant sell dice, ''cut the game,'' take the cut of the game, ''run the box,'' and use the rake; that about ten days before October 10, 1945, the witness lost about $200 in such a crap game at the club and the defendant was there; that on October 10, 1945, about eight p.m. the witness went to the club and lost $5 in such a game; that he then left the building and caused the police to make the raid; that before the raid he returned to the club and when the police arrived the defendant said, ''We are going to have company, get rid of the dice.'' The witness further testified that shortly after the raid the defendant came to the home of the witness and told the witness he would see that the witness got his money back.

One witness for the defendant, testified that he had been a member of the club ever since it started, and that he was upstairs in the club shooting craps at the time of the raid.

The defendant did not testify.

█ It is our opinion that such evidence justified the jury in finding the defendant guilty as charged.

█ On the question of punishment being excessive, the statute authorized such punishment.

Complaint is made as to the giving of two instructions. We consider it sufficient to say that it is our opinion there is no merit to such contention.

█ The only other question raised we consider to be quite serious. It appears that at the time of the raid six other patrons of the club were arrested and taken before a police magistrate. Over the specific and repeated objection of the defendant the police

magistrate was permitted to testify that each of such six persons, giving their names, pleaded guilty to being an inmate of a gambling house and was fined $15 and costs. When the court overruled the objection to the first offer of such evidence, the court stated in the presence of the jury, "let the witness answer for the purpose of general reputation, subject to the objection." The only argument of the prosecution is that the evidence of guilt is so overwhelming that the jury could not reasonably have returned any verdict other than a guilty verdict, and that a conviction will not be set aside for the admission of incompetent evidence where competent evidence in the record proves guilt. The prosecution cites such cases as *People v. Dorr,* 346 Ill. 295, and *People v. Bain,* 359 Ill. 455, which hold that a conviction will not be reversed because of the admission of incompetent evidence which could not reasonably have affected the verdict. In the present case the evidence complained of was fundamentally incompetent and prejudicial. The assistant state's attorney who presented such evidence knew or should have known that such evidence was incompetent and prejudicial, and should not have induced the trial court to admit such evidence. It was the duty of the jury to not only find the defendant guilty or innocent, but also to fix the punishment if they found the defendant guilty. The punishment fixed by the jury was severe, and it is impossible to conjecture how much the jury was influenced by such incompetent evidence. The defendant, whether guilty or innocent, was, of course, entitled to a fair, orderly trial, and it is our opinion that the evidence complained of was so incompetent and so prejudicial as to require a new trial.

The judgment of the trial court is therefore reversed and the cause is remanded to such court for a new trial.

*Reversed and remanded for a new trial.*